# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 8, 2006     Decided December 12, 2006

No. 05-1366

COALITION FOR FAIR LUMBER IMPORTS, EXECUTIVE
COMMITTEE,
PETITIONER

v.

UNITED STATES OF AMERICA, ET AL.,
RESPONDENTS

CANADIAN LUMBER TRADE ALLIANCE, INC., ET AL.,
INTERVENORS

———

*Harvey Kurzweil* argued the cause for petitioner. With him on the briefs was *Alexander M. Kayne*. *Kevin M. Dempsey* entered an appearance.

*Douglas Letter*, Litigation Counsel, U.S. Department of Justice, argued the cause for respondents. With him on the briefs were *Jeffrey S. Bucholtz*, Acting Assistant Attorney

General, and *Gregory G. Katsas*, Deputy Associate Attorney General.

*Seth P. Waxman* argued the cause for intervenors Government of Canada, et al. in support of respondent. With him on the brief were *Randolph D. Moss*, *Mark C. Fleming*, *Danielle M. Spinelli*, *M. Jean Anderson*, *Warren E. Connelly*, *Spencer S. Griffith*, *Mark S. McConnell*, *H. Dean Kaplan*, *Michael L. Stevens*, and *Keith R. Marino*. *Lorane F. Hebert*, *Courtney E. Smothers*, and *Lawrence A. Schneider* entered appearances.

*Elliot J. Feldman* was on the brief for *amicus curiae* Canadian American Business Council in support of respondent.

*Elliot J. Feldman*, *Michael S. Snarr*, *Mark A. Moran*, and *Michael A. Vatis* were on the brief for intervenors the Canadian Lumber Trade Alliance, Inc., et al. in support of respondents. *Bryan J. Brown* entered an appearance.

*Steven E. Becker* was on the brief for *amicus curiae* Government of Mexico in support of respondents.

Before: RANDOLPH and TATEL, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed PER CURIAM.

PER CURIAM: This case presents a constitutional challenge to the binational panel review provisions of the United States-Canada Free-Trade Agreement Implementation

Act of 1988 and the North American Free Trade Agreement Implementation Act of 1993.  As we explain in this opinion, we lack jurisdiction and therefore dismiss the complaint.

**I.**

This case arises from a trade dispute between the United States and Canada regarding softwood lumber imports.  In 2001, the Coalition for Fair Lumber Imports, an association representing U.S. lumber producers, and other interested parties petitioned the Department of Commerce seeking imposition of antidumping and countervailing duties (AD/CVDs) on Canadian softwood lumber imports.  The Coalition alleged that Canadian provincial governments were unfairly subsidizing their local lumber industries by charging below-market timber fees for lumber harvested on government-owned land.  Under 19 U.S.C. §§ 1671b and 1673b, antidumping and countervailing duties may be imposed only if the U.S. government makes two findings, each called a "determination."  As we have previously explained in *American Coalition for Competitive Trade v. Clinton*, 128 F.3d 761 (D.C. Cir. 1997), "the Department of Commerce determines whether dumping has occurred or whether an exporting nation has provided a subsidy.  If the Commerce Department finds dumping or a subsidy, the United States International Trade Commission then determines whether the importer's behavior has actually injured or threatened to injure a U.S. industry."  *Id.* at 762 (citations omitted); *see also* 19 U.S.C. §§ 1671b(a), 1673b(a).  In most situations, a party may seek judicial review of Commerce Department and International Trade Commission

(ITC) determinations only in the U.S. Court of International Trade (CIT).  19 U.S.C. § 1516a(a)(1).

The United States-Canada Free-Trade Agreement Implementation Act of 1988, Pub. L. No. 100-449, 102 Stat. 1851 (1988), and the North American Free Trade Agreement Implementation Act of 1993, Pub L. No. 103-182, 107 Stat. 2057 (1993), however, created an optional alternative review process for Commerce Department and ITC determinations regarding goods imported from either Canada or Mexico. Again, as we explained in *American Coalition for Competitive Trade*:

> Under this scheme, any "interested party" that appeared in the administrative proceedings before the Commerce Department or the International Trade Commission may request a binational panel to review the decisions those domestic agencies made.  Panel members are selected by the United States and the other nation involved, with the United States Trade Representative appointing this country's panel candidates.  These panels apply the substantive law of the importing country.

 128 F.3d at 763 (citations omitted); *see also* 19 U.S.C. §§ 1516a(g)(8), 3432(d); North American Free Trade Agreement, U.S.-Can.-Mex., art. 1904(2), Dec. 17, 1992, 32 I.L.M 605, 683 (hereinafter NAFTA); NAFTA Annex 1901.2, 32 I.L.M. at 687.  If a binational panel rules that a determination fails to comply with U.S. law, the panel

remands the matter to the agency, which "shall . . . take action not inconsistent with the decision of the panel." 19 U.S.C. § 1516a(g)(7)(A). A country may appeal a BNP decision to a binational Extraordinary Challenge Committee (ECC)—again made up of appointees from each country. *See* NAFTA art. 1904(13), 32 I.L.M. at 683; NAFTA Annex 1904.13, 32 I.L.M. at 688. BNP or ECC decisions, as well as agency actions in compliance with these decisions, are not usually reviewable by United States courts. 19 U.S.C. § 1516a(g)(2), (g)(7)(A). Critical to the issues before us, however, Congress gave this court original jurisdiction for facial constitutional challenges to the binational panel system itself:

> An action for declaratory judgment or injunctive relief, or both, regarding a determination on the grounds that any provision of . . . the North American Free Trade Agreement Implementation Act implementing the binational dispute settlement system . . . violates the Constitution may be brought only in the United States Court of Appeals for the District of Columbia Circuit, which shall have jurisdiction of such action.

19 U.S.C. § 1516a(g)(4)(A).

The softwood lumber dispute proceeded through each of these steps. In April 2002, Commerce issued two final determinations finding that Canadian softwood lumber products were being sold below market value, i.e., dumped, and were receiving countervailable subsidies. *See Certain*

*Softwood Lumber Prods. from Canada*, 67 Fed. Reg. 15,539 (Dep't of Commerce Apr. 2, 2002) (notice of final determination of sales at less than fair value*)*; *Certain Softwood Lumber Prods. from Canada*, 67 Fed. Reg. 15,545 (Dep't of Commerce Apr. 2, 2002) (notice of final affirmative countervailing duty determination). After the ITC subsequently determined that these imports "threaten[] with material injury" the U.S. lumber industry, *see Softwood Lumber from Canada*, 67 Fed. Reg. 36,022 (Int'l Trade Comm. May 22, 2002), the Commerce Department imposed duties on Canadian softwood lumber, *see Certain Softwood Lumber Prods. from Canada*, 67 Fed. Reg. 36,068 (Dep't of Commerce May 22, 2002) (notice of amended final determination of sales at less than fair value and antidumping duty order); *Certain Softwood Lumber Prods. from Canada*, 67 Fed. Reg. 36,070 (Dep't of Commerce May 22, 2002) (notice of amended final affirmative countervailing duty determination and notice of countervailing duty order). The Canadian government and other Canadian parties then challenged the ITC's material threat determination by invoking the binational panel process. The BNP, in turn, issued several opinions, ultimately remanding the matter to the ITC with instructions to find that the record evidence "does not support a finding of threat of material injury." *Certain Softwood Lumber Prods. from Canada: Final Affirmative Threat of Injury Determination*, No. USA-CDA-2002-1904-07, 2004 FTAPD LEXIS 8, at *15 (Aug. 31 2004). Complying with the panel's decision, the ITC issued the required determination. *See* Views of the U.S. International Trade Commission on Remand (Third) at 13-14, *Certain Softwood Lumber from Canada*, USITC Pub. 3815, Inv. Nos. 701-TA-414, 731-TA-928 (Sept. 10, 2004). The United

States requested review of the BNP decision by an ECC, which in turn affirmed the panel's decision. *See Certain Softwood Lumber Prods. from Canada*, No. ECC-2004-1904-01USA, 2005 FTAPD LEXIS 6 (Aug. 10, 2005). The Coalition then brought this action under 19 U.S.C. § 1516a(g)(4)(A), alleging that the binational panel system violates various provisions of the U.S. Constitution, including the Due Process Clause, Appointments Clause, and Article III.

## II.

After oral argument, the United States and Canada, with the Coalition's support, entered into the Softwood Lumber Agreement (SLA), pursuant to which the United States revoked its antidumping and countervailing duty orders "without possibility of reinstatement." *See Certain Softwood Lumber Prods. from Canada*, 71 Fed. Reg. 61,714 (Dep't of Commerce Oct. 19, 2006) (notice of rescission of antidumping duty reviews and revocation of antidumping duty order); *Certain Softwood Lumber Prods. from Canada*, 71 Fed. Reg. 61,714 (Dep't of Commerce Oct. 19, 2006) (notice of rescission of countervailing duty reviews and revocation of countervailing duty order). The United States and Canada then moved to dismiss this action, arguing that revocation of the AD/CVD orders deprives the Coalition of Article III standing. Conceding that the SLA renders its claim for injunctive relief unnecessary, the Coalition responds that the agreement does not moot its claims for declaratory relief. According to the Coalition, declaring the binational panel system unconstitutional would make it "less likely that the Government of Canada will prematurely terminate the SLA," Resp. to Mot. to Dismiss 4, because absent an agreement

Canada would no longer be protected by a "biased BNP forum." *Id.* The Coalition also contends that even if no party violates the SLA, once the agreement expires the Coalition "fully expects that it will be forced to participate in a BNP proceeding." *Id.* at 5.

We need not resolve this debate, however, as the SLA deprives us of statutory jurisdiction. *United States ex rel. Long v. SCS Bus. & Tech. Inst., Inc.*, 173 F.3d 890, 893 (D.C. Cir. 1999) ("As between two jurisdictional issues, there ordinarily is no obligation to decide one before the other."); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 100 n.3 (1998) (noting cases where Supreme Court chose between jurisdictional issues). Congress designed the BNP process as an alternative to litigation in U.S. courts. *See, e.g.*, H.R. Rep. No. 100-816, pt. 4, at 1 (1988) (describing panels as an optional "substitute[] for judicial review"). With very limited exceptions, it broadly stripped the jurisdiction of courts to hear claims arising from the binational panel process. *See* 19 U.S.C. § 1516a(g)(2) (stripping jurisdiction from CIT and all other courts when a binational panel review of a determination is requested); *but see, e.g.*, 19 U.S.C. § 1516a(g)(3)(A)(iii) (allowing judicial review in CIT of determinations that were the result of a remand from the CIT, not a BNP).

One of those exceptions is this Court's carefully circumscribed jurisdiction to hear facial constitutional challenges to the binational panel system. 19 U.S.C. § 1516(g)(4)(A). Congress provided jurisdiction to hear such constitutional claims only for an "action for declaratory judgment or injunctive relief, or both, *regarding a*

*determination . . . .*" *Id.* (emphasis added). After the SLA, however, there is no determination left on which to hang our hat. By permanently revoking the AD/CVD orders, the SLA renders the underlying ITC determination void. To do as the Coalition requests—to keep this case either because it *might* ensure that the parties adhere to their agreement or because the parties *may* be subject to some future determination—would read the words "regarding a determination" out of the statute. Absent a determination, this suit amounts to a free-standing challenge to the constitutionality of the binational panel system—a challenge Congress expressly chose not to permit. Lacking jurisdiction over such a claim, we dismiss.

*So ordered.*